**E-FILED**
Wednesday, 23 March, 2011 01:38:56 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JEROME JACOBS ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 09-3138 |
| ) | |
| EUGENE McADORY, LARRY PHILLIPS, ) | |
| and JOHN/JANE DOES, ) | |
|     Defendants. ) | |

MEMORANDUM OPINION AND ORDER

    Before the court are the Defendants' summary judgment motion [18], Defendants' memorandum of law [19] and the Plaintiff's response [20]. The Defendants, Larry Phillips and Eugene McAdory move for summary judgment pursuant to Federal Rule of Civil Procedure Rule 56.

Standard

    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

    "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely

1

allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

## Background

The Plaintiff, Jerome Jacobs, is civilly detained by the Illinois Department of Human Services ("Department") pursuant to the Sexually Violent Persons Commitment Act, 725 Ill. Comp. Stat. Ann. 207/1 et seq. (West 2008) ("SVP Act"). He brings this civil rights action against the Defendants alleging the imposition of black box restraints violates his constitutional rights. Plaintiff further alleges that his constitutional rights were violated when his handcuffs injured his wrists on January 16, 2009. Defendants move for summary judgment on the following grounds: First, the Black Box policy at the Rushville Facility is constitutional. Second, Defendants McAdory and Phillips lack the requisite personal involvement required under 42 U.S.C. §1983 for liability as to Plaintiff's claim regarding unconstitutional force due to overly tightened handcuffs. Third, Defendants are entitled to qualified immunity.

## Undisputed Material Facts[1]

1. Plaintiff, Jerome Jacobs, is a resident of the Rushville facility and is civilly detained pursuant to the SVP Act. (Doc. 1)
2. Defendant Phillips is the Director of the Rushville TDF and oversees the overall administration and operation of the Rushville Facility. (Defs.' Ex. C, Phillips Aff. ¶ 1).
3. Defendant McAdory is the Director of Security at the Rushville Facility and is

---

[1]The Exhibits can be found attached to the Defendants' summary judgment motion [18]. The plaintiff has not provided any exhibits or affidavits to support his response.

responsible for the overall safety and security of the Rushville Facility. (Defs.' Ex. B, McAdory Aff. ¶ 1).

4. On January 16, 2009 the Plaintiff was required to wear a security device called the black box while traveling outside the facility. (Defs.' Ex. A, Pltff's Dep. pg 15).
5. Plaintiff states that the black box policy at the Rushville Facility violates his constitutional rights. (Defs.' Ex. A, Pltff's Dep. pg 6).
6. The black box is a handcuff cover that restricts a resident's access to handcuff keyholes. (Defs.' Ex. B, McAdory Aff ¶ 6).
7. The large majority of residents at the Rushville Facility have repeatedly engaged in acts of sexual violence. (Defs.' Ex. B, McAdory Aff ¶ 6).
8. There is an established history of residents acting in threatening and assaultive ways toward staff and other residents at the facility. (Defs.' Ex. B, McAdory Aff ¶ 3).
9. There have been numerous assaults on staff and between residents. (Defs.' Ex. B, McAdory Aff ¶ 3).
10. The Rushville Facility employs a variety of measures, all of which are monitored and enforced by trained personnel, to maintain institutional security. (Defs.' Ex. B, McAdory Aff ¶ 3).
11. There is greater risk for safety and security concerns when residents are transported outside the secure facility. (Defs.' Ex. B, McAdory Aff ¶ 4).
12. The black box is used upon residents during writs outside the facility when one of the following conditions exists: (1) the resident has been admitted to the Rushville Facility during the past 120 days, (2) the resident has one or more major rules violations within the past year at the facility, or (3) the resident has any other security risk or concern that in the professional judgment of the security director, warrants the use of an additional security measure. (Defs.' Ex. B, McAdory Aff ¶ 7).
13. The black box policy was implemented to target high risk residents, new residents, and other residents who have demonstrated an inability or unwillingness to engage in appropriate conduct. (Defs.' Ex. C, Phillips Aff ¶ 3).
14. Larry Phillips determined that the continuation of the black box policy for major rule violations at the Rushville Facility was in the best interest for the safety and security of the institution. (Defs.' Ex. C, Phillips Aff ¶ 4).
15. The black box ensures during writs the safety and security of staff, other residents, and the general public from residents that have shown an unwillingness to engage in appropriate conduct. (Defs.' Ex. C, Phillips Aff ¶ 4).
16. The policy contains sufficient measures to ensure that residents at the Rushville Facility are not required to use the black box restraints, even if found in violation of a major rule, where the requirement is deemed inappropriate. (Defs.' Ex. C, Phillips Aff ¶ 5).
17. The Rushville Facility includes reviews to ensure the black box is utilized appropriately including a review of all rule violations by the Behavioral Committee for determination of discipline and waivers of the requirement issued by the Security Director. (Defs.' Ex. C, Phillips Aff ¶ 5).
18. The determination to enforce the black box policy is left to the Security Director of the facility. (Defs.' Ex. C, Phillips Aff ¶ 6).
19. Larry Phillips relies on the professional judgment of his Security Director in the

application of the black box policy. (Defs.' Ex. C, Phillips Aff ¶ 6).
20. Larry Phillips does not play a role in the determination of whether a resident should be removed from the black box list. (Defs.' Ex. C, Phillips Aff ¶ 6).
21. Eugene McAdory as the Security Director has the authority to waive the use of the black box if the requirement is determined to be unnecessary. (Defs.' Ex. B, McAdory Aff ¶ 8).
22. A list of residents required to utilize the black box on writs is maintained within McAdory's office. (Defs.' Ex. B, McAdory Aff ¶ 11).
23. The list is continuously updated to reflect residents who have been removed, issued a waiver, or recently added. (Defs.' Ex. B, McAdory Aff ¶ 11).
24. A review of a resident's requirement to use the black box is done on a continuous basis and may be implemented by request of the resident, security staff, grievance officer, clinical staff, or medical staff employed within the Rushville Facility. (Defs.' Ex. B, McAdory Aff ¶ 11).
25. Mr. McAdory makes a determination to waive a resident's requirement to use the black box by taking into account various factors including: (1) safety and security concerns, (2) medical concerns with the resident, (3) recommendations from clinical staff, and (4) recommendations made by the Behavioral Committee and the Grievance Officer. (Defs.' Ex. B, McAdory Aff ¶ 8).
26. Eugene McAdory takes into account security factors such as the resident's age, disciplinary record for the previous six months, and behavior on previous writs when determining if the implementation or waiver of the black box restraints is warranted. (Defs.' Ex. B, McAdory Aff ¶ 9).
27. Mr. McAdory also listens to the recommendations of the medical professionals at the facility to determine if the resident's medical history presents a unique issue for which the implementation of the black box is not recommended. (Defs.' Ex. B, McAdory Aff ¶ 10).
28. The Plaintiff was determined to have committed a major rule violation by the Behavioral Committee on July 30, 2008. (Defs.' Ex. B, McAdory Aff ¶ 12).
29. The Committee determined that the Plaintiff threw a bag of feces out his chuckhole onto the floor during a power outage within the facility. (Defs.' Ex. B, McAdory Aff ¶ 12 and Exhibit 1).
30. The Behavioral Committee noted within its decision that the Plaintiff created a heightened safety risk within the facility because of the power outage. (Defs.' Ex. 1, attached to McAdory Aff).
31. As a result of the major rule violation, Plaintiff was placed on the black box list for a period of one year. (Defs.' Ex. B, McAdory Aff ¶ 12).
32. This black box list would have been continuously reviewed prior to the implementation of the requirement to wear the black box on January 16, 2009. (Defs.' Ex. B, McAdory Aff ¶ 13).
33. The Plaintiff also alleges his wrists were injured as a result of tight handcuff restraints on January 16, 2009. (Defs.' Ex. A, Pltff's Dep. pg 27-28).
34. Plaintiff was transported on a court writ to Winnebago County on January 16, 2009. (Defs.' Ex. A, Pltff's Dep. pg 7).

35. The Plaintiff states that his wrists became sore as he was leaving the courthouse in the afternoon. (Defs.' Ex. A, Pltff's Dep. pg 27).
36. Plaintiff stated that "both my wrists felt like they were on fire" on the return trip to the Rushville Facility. (Defs.' Ex. A, Pltff's Dep. pg 28).
37. Upon return to the facility, the transport van was delayed in the sally port for approximately forty-five minutes. (Defs.' Ex. A, Pltff's Dep. pg 29).
38. Plaintiff states that during the delay his handcuffs were required to remain secured resulting in further injury. (Defs.' Ex. A, Pltff's Dep. pg 30).
39. Plaintiff states the writ officers were denied permission to remove the wrists restraints from the Plaintiff. (Defs.' Ex. A, Pltff's Dep. pg 30).
40. Plaintiff admits that McAdory and Phillips did not apply the Plaintiff's handcuffs. (Defs.' Ex. A, Pltff's Dep. pg 14).
41. The handcuffs were checked for proper fit prior to leaving the facility by a person other than McAdory or Phillips. (Defs.' Ex. A, Pltff's Dep. pg 14).
42. Defendants McAdory and Phillips did not transport the Plaintiff on the Court writ at issue. (Defs.' Ex. A, Pltff's Dep. pg 13-14).
43. Plaintiff admits that his handcuffs were removed during the court writ for use of the restroom. (Defs.' Ex. A, Pltff's Dep. pg 22).
44. Plaintiff also admits the handcuffs were loosened by a writ office before returning to the facility. (Defs.' Ex. A, Pltff's Dep. pg 27).
45. The Plaintiff has no evidence that Larry Phillips or Eugene McAdory were even aware there was an issue with the Plaintiff's handcuffs on January 16, 2009. (Defs.' Ex. A, Pltff's Dep. pg 34).
46. Plaintiff has never even spoken to Phillips or McAdory regarding the issue. (Defs.' Ex. A, Pltff's Dep. pg 34).
47. The Plaintiff has no evidence that Phillips or McAdory denied the request to remove the Plaintiff's handcuffs prior to entering the secure building. (Defs.' Ex. A, Pltff's Dep. pg. 40).

Discussion and Conclusion

First, the court notes that in response to the Defendants' summary judgment, the plaintiff argues, questions and sometimes provides unsupported disputes and makes states such as "it will be found ...." However, now is the put up or shut up time.

Plaintiff is a resident of the Rushville facility and is civilly detained pursuant to the SVP Act. On January 16, 2009, the Plaintiff was required to wear a security device called the black box while traveling outside the facility. Plaintiff states that the black box policy at the Rushville Facility violates his constitutional rights. The black box is a handcuff cover that restricts a resident's access to handcuff keyholes. The continued practice and implementation of the black box policy by Larry Phillips and Eugene McAdory at the facility involves the exercise of professional judgment and is constitutional.

It is well established that "'the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). However, the scope of the substantive due process is very limited, and the Supreme Court has been reluctant to expand the concept. *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). It is most often utilized to combat an abuse of government power which "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952). Civilly committed persons have a substantive due process right to conditions of confinement that bear some reasonable relation to the purpose for which they are committed. *See e.g., Seling v. Young*, 531 U.S. 250, 256 (2001); *West v. Schwebke*, 333 F.3d 745, 748 (7th Cir. 2003). This includes freedom from bodily restraint. *See Youngerberg v. Romeo*, 457 U.S. 307, 316 (1982)(concerning person involuntarily committed to state institution for the mentally handicapped who was physically restrained during portions of each day to protect himself and others in the hospital). However, the law does not go so far as to prohibit security measures that cannot necessarily be classified as treatment; the law requires that one exercises professional judgment to determine whether a security procedure is necessary. "Detainees are entitled to 'the exercise of professional judgment as to the needs of the residents'; if professional judgment leads to the conclusion that restraints are necessary for the well-being of the detainee (or others), then the Constitution permits those devices." *West v. Schwebke*, 333 F.3d at 748 (internal citation omitted) (quoting *Youngberg v. Romeo*, 457 U.S. 301, 322 (1982))

Larry Phillips and Eugene McAdory utilize professional judgment in the continued practice and implementation of the black box policy at the Rushville Facility. The Rushville Facility is not a prison or jail, but neither is it simply a mental hospital. The SVP Act effectuates the indefinite civil detention of individuals who have been convicted of a sexually violent offense and who have been found to be "dangerous because [the person] suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence" again. 725 ILCS 207/5(f). The large majority of residents at the Rushville Facility have repeatedly engaged in acts of sexual violence. There is an established history of residents acting in threatening and assaultive ways toward staff and other residents at the facility. There have been numerous assaults on staff and between residents. Consequently, the Rushville Facility employs a variety of measures, all of which are monitored and enforced by trained personnel, to maintain institutional security. A device utilized at the Rushville Facility to increase security is the black box. There is greater risk for safety and security concerns when residents are transported outside the secure facility. The black box is used upon residents during writs outside the facility when one of the following conditions exists: (1) the resident has been admitted to the Rushville Facility during the past 120 days, (2) the resident has one or more major rules violations within the past year at the facility, or (3) the resident has any other security risk or concern that in the professional judgment of the security director, warrants the use of an additional security measure. The black box policy was implemented to target high risk residents, new residents, and other residents who have demonstrated an inability or unwillingness to engage in appropriate conduct. Larry Phillips determined that the continuation of the black box policy for major rule violations at the Rushville Facility was in the best interest for the safety and security of the institution. The black box ensures during writs the safety and

security of staff, other residents, and the general public from residents that have shown an unwillingness to engage in appropriate conduct. Further, the policy contains sufficient measures to ensure that residents at the Rushville Facility are not required to use the black box restraints, even if found in violation of a major rule, where the requirement is deemed inappropriate. These measures include a review of all rule violations by the Behavioral Committee for determination of discipline and waivers of the requirement issued by the Security Director. The determination to enforce the black box policy is left to the Security Director of the facility. Larry Phillips relies on the professional judgment of his Security Director in the application of the black box policy.

The requirement that the Plaintiff wears the restraints due to the rule violation is not a rigid or blanket requirement. Eugene McAdory as the Security Director has the authority to waive the use of the black box if the requirement is determined to be unnecessary. A list of residents required to utilize the black box on writs is maintained within McAdory's office. The list is continuously updated to reflect residents who have been removed, issued a waiver, or recently added. A review of a resident's requirement to use the black box is done on a continuous basis and may be implemented by request of the resident, security staff, grievance officer, clinical staff, or medical staff employed within the Rushville Facility. Mr. McAdory makes a determination to waive a resident's requirement to use the black box by taking into account various factors including: (1) safety and security concerns, (2) medical concerns with the resident, (3) recommendations from clinical staff, and (4) recommendations made by the Behavioral Committee and the Grievance Officer. Eugene McAdory takes into account security factors such as the resident's age, disciplinary record for the previous six months, and behavior on previous writs when determining if the implementation or waiver of the black box restraints is warranted. Mr. McAdory also listens to the recommendations of the medical professionals at the facility to determine if the resident's medical history presents a unique issue for which the implementation of the black box is not recommended. In the instant matter, the Plaintiff was determined to have committed a major rule violation by the Behavioral Committee on July 30, 2008. The Committee determined that the Plaintiff threw a bag of feces out his chuckhole onto the floor during a power outage within the facility. The Behavioral Committee noted within its decision that the Plaintiff created a heightened safety risk within the facility because of the power outage. As a result of the major rule violation, Plaintiff was placed on the black box list for a period of one year. This black box list would have been continuously reviewed prior to the implementation of the requirement to wear the black box on January 16, 2009.

Determinations made by the appropriate professional are entitled to a presumption of correctness. *Youngberg v. Romeo*, 457 U.S. 301, 324 (1982)). "Liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did no base the decision on such a judgment." *Id*. at 322. Larry Phillips and Eugene McAdory have utilized professional judgment in the continuation and implementation of the black box policy. Plaintiff cannot show that determinations regarding the black box policy are a substantial departure from professional judgment. *In Davis v. Peters*, the Northern District of Illinois found that the black box policy had been imposed too long in the absence of professional judgment. 566 F.Supp.2d 790 (N.D. Ill. 2008). At that time, the then-facility director of the Sexually

Violent Persons Unit imposed a universal black box policy on the entire resident population in response to an escape. The detainee, among other claims argued that the director "violated his substantive due process right to fair and reasonable conditions of detention." *Id.* at 813. Specifically, the detainee argued that the director failed to use professional judgment by requiring the detainee to wear the black box on all of his trips over a fifteen month period. *Id.* at 817. The court found that there was a legitimate concern over the escape and concluded that it was within the bounds of professional judgment to apply the black box to all residents during transport for a six month period following the escape. *Id.* The court held that the director failed to exercise professional judgment in applying the black box policy universally after the initial six month period. *Id.* At 818-19. The instant matter is distinguishable from Davis. There, the director mandated universal application of the black box for an indefinite period of time. There were no judgments to be used in the imposition of the policy because each person was subjected to it. Here, residents of the Rushville Facility may be subjected to the black box restraints for a determinate term if found to have violated a major rule within the institution. Unlike the policy in Davis, Rushville has allowed for continuous review of the policy upon individual residents. Further, the Rushville Facility has layers of review prior to the implementation of the policy and even allows for waivers of the requirement. The policy in the instant matter utilized professional judgment and is therefore constitutional.

Even if the use of the black box was found to be unconstitutional, Phillips and McAdory lack the requisite personal involvement necessary in order to be liable for personal involvement necessary in order to be liable for injuries resulting from overly tightened handcuffs. The Plaintiff alleges his wrists were injured as a result of tight handcuff restraints on January 16, 2009. Plaintiff was transported on a court writ to Winnebago County on January 16, 2009. The Plaintiff states that his wrists became sore as he was leaving the courthouse in the afternoon. Plaintiff stated that "both my wrists felt like they were on fire" on the return trip to the Rushville Facility. Upon return to the facility, the transport van was delayed in the sally port for approximately forty-five minutes. Plaintiff states that during the delay his handcuffs were required to remain secured resulting in further injury. Specifically, Plaintiff states the writ officers were denied permission to remove the wrists restraints from the Plaintiff. It appears that the Plaintiff may also be stating a claim that unconstitutional force was used in the application of the restraints upon his wrists. This claim against McAdory and Phillips fails as a matter of law.

When bringing a claim against a state employee under §1983, a Plaintiff must show that the employee was "personally responsible for the constitutional deprivation." *J.H. & J.D. v. Johnson, et al.*, 346 F.3d 788, 793 (7 th Cir. 2003). The Seventh Circuit Court of Appeals has explained that 42 U.S.C. §1983 does not set up a system of vicarious liability. *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). "Public employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. In this case, Plaintiff admits that McAdory and Phillips did not apply the Plaintiff's handcuffs. The handcuffs were checked for proper fit prior to leaving the facility by a person other than McAdory or Phillips. Defendants McAdory and Phillips did not transport the Plaintiff on the Court writ at issue. Plaintiff admits that his handcuffs were removed during the court writ for use of the restroom. Plaintiff also admits the handcuffs were loosened by a writ office before returning to the facility. The Plaintiff has no

evidence that Larry Phillips or Eugene McAdory were even aware there was an issue with the Plaintiff's handcuffs on January 16, 2009. Plaintiff has never even spoken to Phillips or McAdory regarding the issue. Further, the Plaintiff has no evidence that Phillips or McAdory denied the request to remove the Plaintiff's handcuffs prior to entering the secure building. Thus, Defendants McAdory and Phillips lack the requisite personal involvement to be liable to Plaintiff for any claims of unconstitutional force as a result of over tightened handcuffs.

It is therefore ordered:

1. Pursuant to Federal Rule of Civil Procedure Rule 56, the defendants' motion for summary judgment is granted [18]. The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.

2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C).

Enter this 23rd day of March, 2011.

**\s\Harold A. Baker**
_____
Harold A. Baker
United States District Judge